### SCHWAB v. MORGAN.

(District Court, D. Rhode Island. August 2, 1913.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—AUTOMOBILE TOOL.

The Bryant patent No. 1,008,694 for a spring contracting and removing device for use as an automobile tool, claims 2 and 3 *held* valid and infringed and claims 1, 4, and 7 valid but not infringed.

In Equity. Suit by Louis Schwab against Bernard Morgan. Decree for complainant.

Andrew Wilson, of New York City, for complainant.
Munn & Munn, of New York City, for defendant.

BROWN, District Judge. The bill charges infringement of letters patent No. 1,008,694, November 14, 1911, to George W. Bryant, for spring contracting and removing device. Claims 1, 2, 3, 4, and 7 are in suit. Claim 3 is the broadest claim and will be considered first.

3. In a device of the character described, the combination of a stock piece having a cylindrical bore, a carrying member to move in said bore and adapted to be inserted therein from either end, forked engaging members carried one by the stock piece and one by the carrying member, and means mounted on the stock piece for moving the carrying member to cause relative approaching and separating movements between the engaging members.

The invention pertains to clamps for compressing and holding springs, and the device is especially designed for use as an automobile tool, in removing or placing in position the valve springs of ex-

plosion engines. The stems of such valves project outside of the engine casing, and each carries near its lower end a disc which is held up by a pin or key fastened through a hole in the valve stem. A spiral spring surrounds the valve stem and is held under tension between the disc and a bearing on the valve casing. It is desirable at times to release the valves from the control of the spring, and this requires compression of the spring so that the disc may be raised and the key withdrawn, freeing the valve stem and valve.

The device of the patent in suit comprises a stock or body piece of cylindrical form and a carrying rod mounted to move endwise in the bore of the body piece. The carrying rod has at one end a spring engaging member, U-shaped or forked, so that its two sides may be pushed into the spring on either side of the valve stem, being made sufficiently thin to enter readily between the coils of the spring; the prongs or forks being of sufficient width to enable the member to engage properly springs varying considerably in diameter.

The body piece in which the carrying member moves has a U-shaped or forked jaw. The spring may be compressed or extended by the relative movement of the jaw. In claim 3 the means for moving the carrying member to cause relative approaching or separating movements between the engaging members are claimed broadly; the only limitation being contained in the words "mounted on the stock piece."

In none of the devices of the prior art to which the defendant refers is disclosed the combination of elements of claim 3. The feature of clamping jaws intended to enter between the coils of the spring is claimed to be novel with the patentee. It is suggested that the device of the Wickwire patent No. 875,761 might be used in this way, but Wickwire does not suggest such a use, and the device as described in his patent does not seem adapted for this purpose.

Complainant says:

"None of these devices would do what Bryant's tool does and grasp only the spring itself, compress it, and hold it compressed, so that it could be removed and replaced. Bryant did this by inserting the jaws of his tool between the coils of the spring. That has never been done before. And he not only did that, but he so constructed his tool that it could be used to (1) push up the bottom of the spring with the disc; or (2) push out the disc; or (3) to draw the spring together with the disc; or (4) without the disc; and so that (5) its range of operation might be extended by reversing its parts to permit the jaws to be moved wider apart; (6) so that it would be locked against movement from its desired position."

The adaptability for use in different positions, and with its parts in different relative positions, is a feature pointed out and illustrated in the patent. I find nothing in the prior art as cited by the defendant which invalidates claim 3. The means for moving the carrying members to cause relative approaching and separating movements between the engaging members shown in the patent in suit are a rack and pinion; the pinion being moved by a key. Because the operating mechanism is a rack and pinion it is necessary, in order to retain the step by step approaching and receding movements, to provide an automatic locking device whereby the parts may be held from movement under the load strains, which would tend to cause a movement

reverse in direction to that produced by the turning of the key. Bryant shows a stop pawl which serves as a detent and which is reversible to permit movement in one direction and stop it in the other. As it is desired to cause the jaws to approach or recede, the pawl is set in one direction or the other. This feature of a stop pawl is contained in other claims but is no part of claim 3. From the history of the invention it is clear that Bryant well understood the equivalency of the rack and pinion and the screw and nut as means for controlling the movement of the jaws. He made drawings both of the screw and nut and of the rack and pinion as equivalent mechanical means for causing the approach and separation of the jaws.

The defendant's device is illustrated in the patent to Morgan No. 1,050,746, January 14, 1913. Instead of a rack and pinion Morgan uses a screw and nut. As the nut, by reason of the flat thread of the screw, resists reverse strains, it is not essential to provide a detent for this purpose as in the rack and pinion construction, but the rack and pinion, with the detent or stop pawl, and a screw with a ratchet nut operated by a lever, are equivalent mechanical means for controlling relative movements of two parts. In view of Bryant's knowledge of this equivalency, as well as of the expert testimony on this point, and in view of the adaptability of his tool to assume positions of which former tools were incapable, I am of the opinion that he was entitled to claim broadly means for controlling the jaws and to cover both of the well-known forms of appliances for this purpose.

. It is objected that the expression, "means mounted on the stock piece for moving the carrying member," is inapplicable to the defendant's device for the reason that the nut rests upon and is sustained by the thread of the screw; but the means includes not only the nut but the means for engaging the teeth on the exterior of the nut, which include a lever handle, and a pawl which engages the teeth. This pawl is reversible, and the nut may be turned in either direction according to the manner in which the pawl is adjusted. The handle and the pawl may, with sufficient accuracy, be said to be mounted upon the stock piece.

The defendant says also that, because the removal of the nut from the screw is a slow process compared with the removal of defendant's rack, his device does not have that adaptability for reversal which is a feature of the complainant's device. By reversing the rack the jaws of the complainant's device may be brought closer together, and this is a feature which is advertised by the defendant as a feature of the Morgan device.

I am of the opinion that claim 3 is valid and infringed.

As to the other claims, the principal contention of the defendant is that he has no element corresponding to the element described as a "reversible stop pawl." The defendant doubtless has a reversible pawl whereby he can control the direction in which the carrying member will move, but the pawl is used by the defendant to perform a different function from the function performed in the complainant's device. The complainant uses it as a detent to prevent movement of the pinion and of the rack. The defendant uses the pawl to make en-

gagement between the ratchet nut and the lever arm which gives motion to the ratchet nut. I have closely followed the argument of the complainant upon this point but am unable to find that the defendant's device contains as a substantial matter an element corresponding to the element "a reversible stop pawl." The functional difference in the use of the pawl in the two devices prevents the acceptance of the complainant's proposition that the defendant's stop pawl is the equivalent of complainant's stop pawl. While the screw, ratchet nut, pawl, and lever on the one hand may be regarded as the equivalent of the rack, pinion, stop pawl, and key on the other hand, yet these are not the same mechanical combinations. They are old combinations differing mechanically, but which as wholes may be substituted one for the other. They are equivalents for producing the relative movements of the jaws, but they are not the same mechanical combinations.

Claim 1 has an element "a reversible stop pawl for preventing movement of the carrying member on the stock piece." I do not think it can be fairly said that the defendant has a stop pawl for this purpose. The fact that when his pawl is set for, say, a right-hand movement, there are no means for turning the nut in the left-hand direction does not amount to a prevention of movement of the nut against the load strains.

In claim 2 the function of the reversible stop pawl is not set forth. There is in the defendant's device a reversible pawl which corresponds to the description in claim 2 and which enables the defendant's device to be set in either of two opposite operating positions. I have some doubts whether the mere use of the term "stop pawl" limits this claim to restrict it to a pawl used for the prevention of motion. It may perhaps be said that this claim is infringed by the use of a pawl for either of the two functions of stopping a reverse movement under load or of selecting and controlling the operating positions. In this latter respect the defendant has closely followed Bryant. In fact, the testimony that the defendant was formerly employed by Bryant to manufacture his device, and the close resemblance of the structures, supports the argument that the use by the defendant of a reversible pawl to perform but one of the two functions of the complainant's pawl does not enable him to escape infringement. If the defendant has appropriated a valuable feature of the complainant's device, he cannot avoid infringement merely because he does not use an element of that combination for all its functions.

While the question as to claim 2 is not altogether clear, I find on the whole that claim 2 is valid and infringed. Claims 4 and 7 I find are not infringed for the reasons heretofore given as to claim 1.

I am of the opinion that claims 2 and 3 are valid and are infringed and that claims 4 and 7 are valid but are not infringed.

A draft decree may be presented accordingly.