## MORGAN v. SCHWAB.

(Circuit Court of Appeals, First Circuit. September 10, 1914.)

### No. 1063.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SPRING CONTRACTING AND REMOVING DEVICE.

The Bryant patent, No. 1,008,694, for a spring contracting and removing device, especially intended for use in connection with valve springs of explosion engines, *held* not anticipated, valid, and infringed as to claims 2 and 3.

Appeal from the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Suit in equity by Louis Schwab against Bernard Morgan. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 207 Fed. 107.

T. Hart Anderson, of New York City (Munn & Munn, of New York City, on the brief), for appellant.

Andrew Wilson, of New York City, for appellee.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

DODGE, Circuit Judge. Morgan, the appellant here, was held, in the District Court, to have infringed United States patent 1,008,694, issued November 14, 1911, to George W. Bryant and owned, when the bill in this case was filed, by Schwab, the plaintiff below.

The patent is for a "spring contracting and removing device." It has seven claims, but there is now no question as to claims 5 and 6; the plaintiff not having contended that Morgan has infringed them. The District Court held claims 2 and 3 valid and infringed. Claims 1, 4, and 7 were held valid, but not infringed. See (D. C.) 207 Fed. 107. Morgan alone appeals.

The invention relates, as stated in the patent—

"more especially to devices intended for contracting and removing, or placing in position, the valve springs of explosion engines. Such valve springs, and especially those of automobile engines, are frequently or usually so located that access to them is obstructed by other parts or attachments of the en-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

gine, so that it is extremely difficult to get proper access to the springs for contracting or releasing the pressure on the valve stem and removing the valve, or for removing the springs or placing them in position."

In previous attempts, it is said, to provide tools for the purpose, the tools—

"have been of such shape or size or operated in such a way that they can be used only with great difficulty and inconvenience, * * * and are usually limited in their use to a particular operation, such as a mere lifting of the lower end of the spring by raising the disk on which the spring rests to relieve the pressure on the valve stem."

And the object of the invention is stated to be—

"to provide a device * * * which shall combine great strength and power with ease of operation and adjustment and such compactness and simplicity of construction and adaptability to being used in different positions, and with its parts in different relative positions, that it shall be adapted for convenient use with all styles of engines."

The invention is then stated to consist in—

"the construction and arrangement and combinations of parts in a device of the character referred to, as hereinafter fully described and specifically pointed out in the claims."

The opinion below describes the patented device as comprising—

"a stock or body piece of cylindrical form and a carrying rod mounted to move endwise in the bore of the body piece. The carrying rod has at one end a spring engaging member, U-shaped or forked, so that its two sides may be pushed into the spring on either side of the valve stem, being made sufficiently thin to readily enter between the coils of the spring; the prongs or forks being of sufficient width to enable the member to engage properly springs varying considerably in diameter."

The body piece referred to, in whose bore the carrying member is mounted to move endwise, as stated, has also a like U-shaped or forked engaging member, and it is by relative approaching or separating movements between these two engaging members that the spring, to which the device may be applied is compressed or extended.

The necessary relative movement is produced, in the device described and illustrated in the patent, by an operating gear or pinion, mounted in the body piece in position to engage a rack on the carrying member; the pinion being moved by a key. The patent states, however, that it describes in detail "a preferred construction," also that the invention "is not to be limited to the exact construction and arrangement shown," but is to "include changes and modifications thereof within the claims."

Claim 3, regarded by the court below as the broadest claim, and therefore first considered, is for the combination, in a device of the character described, of (1) the stock or body piece; (2) the carrying member to move in the cylindrical bore of (1) and adapted to be inserted from either end thereof; (3) forked engaging members carried by (1) and (2) respectively; and (4)—

"means mounted on the stock piece for moving the carrying member to cause relative approaching and separating movements between the engaging members."

We are unable, as was the court below, to find, in any device of the prior art relied on by Morgan, the same capacity of use in different positions which the patented device possesses because of the adaptation of its carrying member to be inserted from either end of the cylindrical bore of the body piece, combined with forked engaging members adapted for ready insertion between the coils of the spring. The nearest approach is found in the device patented by Wickwire (No. 875,761, January 7, 1908). But if this device can be said to have a stock or body piece, or any "cylindrical bore" therein, or any "carrying member" inserted therein, it has two cylindrical bores and two carrying members. No reversibility is suggested by the patent; if reversible at all, there is no such ready reversibility as in the patented device; and as to the "engaging members," if these are or can be made adaptable to enter in any degree between the coils of the spring, this would be only by putting them to a use neither suggested in the patent nor contemplated in the organization of the device described therein, which has for its object nothing more than the compression of the spring, with the disk whereon it rests, as was the case with the preceding devices which the patent describes.

Morgan's means for moving his carrying member to cause relative approaching and separating movements between his engaging members are (instead of a rack on the carrying member engaged by an operating gear mounted in the body piece) a screw-thread on the carrying member, whereon is screwed a nut mounted in the body piece and movable with the latter up or down on the screw-thread. The threaded carrying member is adapted to be inserted from either end into the cylindrical bore of the body piece. The device, like that of the patent, is thus adapted for reversal, and Morgan advertises it as so adapted. The forked engaging members of Morgan's device we are unable to distinguish, so far as capability of entering readily between the coils of a spring is concerned, from the forked engaging members of the patent.

The gear or pinion of the patent is worked by a detachable key. Morgan's screw-nut is rotated by the forked end of a hand-lever permanently mounted on the nut, but so mounted as to swing loosely around it. Teeth on the peripheral face of the nut, engaged by a reversible pawl in the hand-lever, held in engagement with them by a spring, enable the hand-lever to turn the nut on the screw-thread when swung in one direction, leaving it stationary thereon while the lever is swung in the reverse direction in preparation for another turn. The gear or pinion of the patent works in connection with a reversible stop-pawl which prevents movement, according to its position, of the carrying member with its rack, on the body piece, in one or the other direction. Morgan has taken out a patent for his device, No. 1,050,746, January 14, 1913, wherein his "means for moving the carrying member" are illustrated.

The combination described in claim 3 of the patent is found in Morgan's device, if the means whereby its carrying member is moved are equivalents of the means described in the patent. It is true that Morgan's device does not require and does not employ any appliance to do

what the stop-pawl of the patent does; i. e., prevent the carrying member from moving in the reverse direction when the means for moving it in the desired direction are not being actually applied for that purpose. The flat thread of Morgan's screw in the nut offers resistance enough to reverse strains without the aid of any detent. But we do not find in this fact sufficient reason to differ from the District Court in its conclusion that Morgan's screw-thread on the carrying member and lever-operated rachet nut on the stock piece are mechanically equivalent to the rack, pinion, and stop-pawl of the patent, as means for moving the carrying member. We agree, therefore, that Morgan's device infringes claim 3.

That Bryant's drawings made in preparation for his application showed both means of producing the necessary movement referred to is not disputed. That he selected the rack and pinion as the means to be shown and described in his patent, accompanied by the distinct statement that he regarded them only as a "preferred construction," does not seem to us a deliberate renunciation, as is urged on Morgan's behalf, of the other means referred to.

Bryant, as also appears without dispute, had shown Morgan both drawings before filing his application, and Morgan had made tools for Bryant embodying both the above means. Morgan later filed his own application for the patent describing his infringing device, after Bryant's patent had issued and Bryant's tools had shown that they met a public demand.

Claim 2 is for the combination in a device of the character described of (1) the stock or body piece; (2) the carrying member mounted to move on (1) and provided with a rack; (3) forked engaging members carried by (1) and (2) respectively; (4) an operating gear mounted in (1), in position to engage the rack with which (2) is provided; (5) a reversible stop-pawl, spring-pressed toward (4) and provided with means for setting it in either of two operating positions.

It follows, from what is said above, that this combination is found in Morgan's device, unless the reversible stop-pawl, above referred to as the element numbered (5), is not therein found.

Morgan's device has a reversible stop-pawl, but, as is pointed out in the opinion of the District Court, it is not an element in all respects corresponding to that element of claim 2, to which those words are therein applied. It does not stop a reverse movement under load, as does the reversible stop-pawl described in the patent. It does, however, because reversible, enable the operating gear to be set for operation in either of two opposite directions; and this is also accomplished by the pawl of the patent, in addition to stopping reverse movement under load. We agree with the District Court that the pawl of Morgan's device is, for the reasons and to the extent there stated, to be regarded as performing the functions of the pawl which forms an element of the combination covered by claim 2; and that the device infringes that claim also.

The decree of the District Court is affirmed, and the case remanded to that court for further proceedings in accordance with this opinion; and the appellee recovers costs in this court.